# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 19, 2010

## STATE OF TENNESSEE v. DWAYNE THOMAS HOOTEN

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-117     Mark J. Fishburn, Judge**

---

**No. M2010-00626-CCA-R3-CD - Filed January 20, 2011**

---

The Defendant, Dwayne Thomas Hooten, appeals as of right from the Davidson County Criminal Court's revocation of his community corrections sentence and order of incarceration. The Defendant contends that the trial court erred by ordering the previously imposed sentence to be served in confinement. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Dwayne Thomas Hooten.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Janice A. Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 9, 2009, the Defendant pled guilty to one count of possession with intent to sell or deliver less than .5 grams of cocaine. The Defendant was sentenced to six years on community corrections. On February 9, 2010, a violation warrant was issued by the trial court alleging that the Defendant violated the conditions of his community corrections sentence by committing new offenses on December 5, 2009 and February 4, 2010.

At the revocation hearing, Officer Anthony Chandler of the Metropolitan Nashville Police Department (MPD) testified that on December 5, 2009, he stopped a white Toyota for

running a stop sign. The Defendant was a passenger in the vehicle, and after obtaining the driver's consent to search the vehicle, Officer Chandler observed the Defendant with a blunt of marijuana in his left hand. Officer Chandler asked the Defendant to exit the vehicle, and the Defendant placed the blunt on the right console as he got out of the vehicle. The Defendant admitted to Officer Chandler that the marijuana was his. During his search of the vehicle, Officer Chandler found several small baggies with "a substance consistent with crack cocaine" under the passenger seat. Officer Chandler testified that the Defendant was subsequently charged with two counts of possession of a controlled substance with prior convictions, a Class E felony.

Officer Eric Knight of the MPD testified that on February 4, 2010, he conducted a narcotics buy using a confidential informant. The informant arranged the buy during a telephone call with a man Officer Knight believed to be the Defendant. At the arranged time and location, a vehicle arrived with the Defendant and two other men inside. The informant, wearing a listening device, went to the vehicle and got in the back seat. Officer Knight could hear the exchange take place and could see the Defendant's head move as he spoke to the informant. On cross-examination, Officer Knight admitted that he was not familiar enough with the Defendant's voice to identify him as the one he heard over the wire, but when he heard a man speak to the informant, he could see the Defendant's head moving as if he were talking. The informant returned to Officer Knight with a baggy containing a white powder, which field tested positive for cocaine.

Officer Knight testified that as officers closed in to arrest the Defendant and his companions, "the vehicle took off at a high rate of speed" and struck an undercover police car. The vehicle was later found at 1017 North Sixth Street, where the Defendant and his co-defendant were sitting on the porch of a vacant residence. Inside the vehicle was another baggy containing cocaine. The Defendant's wallet was found on the ground a few feet away from the passenger side door of the vehicle. Additionally, between the vehicle and the porch was a baggy containing 13 Xanax pills. Officer Knight testified that the money used in the buy had been previously photocopied and that the informant gave the Defendant $140 in exchange for the cocaine. When the Defendant was arrested, he had the previously identified $140 on him. Based on this, Officer Knight testified that the Defendant was charged with sale of a .5 grams or more of cocaine in a school zone and possession of a controlled substance in a school zone.

The Defendant's mother, Shannon Hooten, testified on his behalf at the revocation hearing. Ms. Hooten testified that she takes care of the Defendant's two children and that in 2000 the Defendant was shot several times and is paralyzed from the chest down. While on community corrections, the Defendant would stay with Ms. Hooten for up to two weeks at a time. Ms. Hooten further testified that when the Defendant stayed with her, she and her

daughters would take care of the Defendant's medical care. This included changing the bandages on his back ulcers several times a day, changing his colostomy bag, and changing his catheter. Ms. Hooten testified that while incarcerated, the Defendant was not receiving proper medical care.

Ms. Hooten explained that the Defendant could only stay for two weeks at her apartment because her apartment complex would not allow a convicted felon to live in her home. The rest of the time, the Defendant would stay with his girlfriend. Ms. Hooten testified that if the Defendant were placed back on community corrections, this arrangement would continue. On cross-examination, Ms. Hooten admitted that "I've known my son to pick up charges" but she was not familiar with his criminal record in general, why he was originally placed on community corrections, or his criminal record while on community corrections. On redirect examination, Ms. Hooten testified that one of the Defendant's children had been shot and killed by an unknown assailant in July of 2009 and that this was "a contributing factor in [the Defendant's] drug use."

Clemmie Greenlee runs a licensed non-profit organization called Galaxy Star Drug Awareness which deals with substance abuse. Ms. Greenlee testified that she had spoken with the Defendant several times about participating in the program. However, Ms. Greenlee testified that she had never actually met the Defendant in person, but she was willing to accept the Defendant into her program. Ms. Greenlee said that she would "be his one-on-one caretaker" if he was placed back on community corrections. Ms. Greenlee stated that the Defendant told her he was reaching out to her for help dealing with his depression and coping with the death of his daughter. Ms. Greenlee testified that she had taken a very personal interest in the Defendant and that she would provide him with either inpatient or outpatient drug treatment along with Narcotics and Alcoholics Anonymous meetings and "workshops." Ms. Greenlee also testified that she would like the Defendant to be a motivational speaker to the young people in her program.

On cross-examination, Ms. Greenlee admitted that a court employee looking for community service work for the Defendant had initially contacted her and not the Defendant. Ms. Greenlee also admitted that she knew nothing about the Defendant's criminal record, the charges he was facing, or even that he was currently incarcerated. Ms. Greenlee further admitted that no one from her program had performed an assessment to determine whether the Defendant would qualify to participate in her program.

The Defendant testified that he did not have an answer for why he had not followed the terms of his release other than that he was "just trying to provide a better life for my kids." The Defendant further testified that he knew "I messed up" and that he needed drug treatment and was "headed that way before this incident." The Defendant also testified that

he was receiving substandard medical care while incarcerated. The Defendant told the trial court that he was "done with the streets" and ready to get help through Ms. Greenlee's program. The Defendant also informed the trial court that he could "be much more help on the outside to some youth than just sitting in [jail] doing nothing." On cross-examination, the Defendant admitted that he did not contact Ms. Greenlee's program until after his December 2009 arrest.

Based on the foregoing evidence, the trial court ruled that the State had proven by a preponderance of the evidence that the Defendant violated the conditions of his community corrections sentence by committing other crimes. In deciding whether to incarcerate the Defendant, the trial court noted that the Defendant had "a history of . . . using his wheelchair as [an] excuse[]" for his criminal record. The trial court expressed concerns that the Defendant's proposed living situation was unstable with him "bouncing around" between residences. While sympathetic to the Defendant, the trial court noted that he had violated the terms of his release "every time he's been on [c]ommunity [c]orrections, and at some point, it's just got to stop." The trial court then ordered the Defendant to serve the remaining time on his original six year sentence in confinement.

## ANALYSIS

The Defendant does not challenge the trial court's decision to revoke his community corrections sentence. Instead, the Defendant contends that given his physical condition, the trial court erred by incarcerating him instead of placing him back on community corrections. The State responds that it was well within the trial court's discretion to revoke the Defendant's community corrections sentence and order the remainder of his original sentence to be served in confinement.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation occurred. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991). Pursuant to Tennessee Code Annotated section 40-35-311(e), the trial court is only required to find that the violation of a community corrections sentence occurred by a preponderance of the evidence. In reviewing a trial court's findings, this court must examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. State v. Mitchell, 810 S .W.2d 733, 735 (Tenn. Crim. App. 1991). Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the community corrections sentence and order the original sentence to be served in confinement. Tenn. Code Ann. § 40-36-106(e)(4).

There is simply no evidence in the record to suggest that the trial court abused its discretion in ordering the Defendant to serve the remainder of his sentence in confinement. The State proved, by a preponderance of the evidence, that the Defendant violated the terms of his community correction sentence twice in the span of three months by committing new drug related offenses. Once the State has met its burden to prove a violation, the trial court has broad authority to resentence a defendant "to any appropriate sentencing alternative, including incarceration." Tenn. Code Ann. § 40-36-106(e)(4). The record shows that the trial court made a conscientious judgment in deciding to incarcerate the Defendant. The trial court was sympathetic to the Defendant's physical conditions and stated that it would attempt to obtain better medical treatment for him. However, given the Defendant's history of violating the terms of community corrections release, the trial court ultimately concluded that the remainder of the Defendant's sentence should be served in confinement. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE